FILED BY _____ D.C.

05 DEC 14 AM 6:48

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| JAMES SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-2406 DV |
| | ) | |
| BOYD GAMING CORPORATION | ) | |
| d/b/a SAM'S TOWN CASINO TUNICA, | ) | |
| WILLIAM ANDERSON, individually and | ) | |
| in his capacity as Sam's Town Employee, | ) | |
| PAT HAWKINS, individually and in his | ) | |
| capacity as a Mississippi Gaming Official, | ) | |
| and FAYE PERKINS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANT BOYD GAMING CORPORATION'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, TO DISMISS FOR IMPROPER VENUE, AND TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

Defendant, Boyd Gaming Corporation ("Boyd"), asks this court to dismiss the complaint of James Sullivan ("Plaintiff") which alleges Boyd's liability against Plaintiff for civil rights violations pursuant to 42 U.S.C. § 1983, malicious prosecution, abuse of process, false arrest, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. Boyd avers that dismissal is warranted under Fed. R. Civ. P. 12(b)(2) because this court cannot exercise personal jurisdiction over Boyd in this case and, further, that dismissal is appropriate under Fed. R. Civ. P. 12(b)(3) because venue is improper. Failing dismissal of Plaintiff's complaint, Boyd requests

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on _____



1

that the instant action be transferred pursuant to this court's discretion to do so under 28 U.S.C. § 1404(a). For the reasons articulated below, Boyd's motions to dismiss and its request for transfer are DENIED.

## I. Background Facts

Plaintiff is a resident of Memphis, Tennessee and has lived there during the entire course of events giving rise to the instant action. (Compl. at 1). Boyd, a Nevada corporation with its principal place of business in Las Vegas, Nevada, is registered for purposes of conducting business as a corporation in the State of Mississippi. (Compl. ¶ 5). Sam's Town Casino Tunica ("Sam's Town") is a gaming facility in Robinsonville, Mississippi owned and operated by Boyd Tunica, Inc., a wholly owned subsidiary of Boyd. (Pl.'s Resp., Ex. A at 8). Boyd is not registered for purposes of conducting corporate business in Tennessee, nor does it maintain an office in that State. (Def.'s Mot. Dismiss ¶ 13); (Mem. Supp. Def.'s Mot. Dismiss at 2). All records of Boyd Tunica, Inc. are located in Robinsonville, Mississippi and/or Las Vegas, Nevada. (Def.'s Mot. Dismiss, Ex. A ¶ 5). Neither Boyd, nor any of its co-defendants, are residents of the State of Tennessee. William Anderson ("Anderson"), Boyd's employee, is a resident of Olive Branch, Mississippi. (Def.'s Mot. Dismiss, Ex. B ¶ 4). Co-defendants Pat Hawkins ("Hawkins"), an investigator with the Mississippi Gaming Commission, and Faye Perkins ("Perkins") are residents of Tunica County, Mississippi. (Def.'s Mot. Dismiss ¶ 16, ¶ 17).

Sam's Town is located approximately 30 miles south of Memphis, Tennessee, and residents of Memphis make up a substantial portion of its customers. (Pl.'s Resp. to Def.'s Mot. Dismiss, Ex. A at 5). Boyd promotes Sam's Town through print, billboard, television, and radio advertising in Tennessee. (Def.'s Rebut. Mem. Supp. Def.'s Mot. Dismiss at 1); (Pl.'s Mem. Resp. Def.s' Mot.

2

Dismiss at 5). Like Plaintiff, many of Boyd's employees reside in Tennessee. (Pl.'s Resp. Def.'s Mot. Dismiss ¶ 3).

Plaintiff worked as a card dealer at Sam's Town from July 1997 until his termination on March 6, 2002. (Compl. ¶ 10). During the period of his employment, Plaintiff, an African-American, allegedly lodged several formal and informal complaints with Sam's Town's management for what he perceived as inadequate workplace diversity, insensitivity toward African-American employees and customers, and unfair labor practices and procedures. (Compl. ¶ 11, ¶ 12). Plaintiff contends that Sam's Town's management responded by initiating increased surveillance of his actions on the casino floor in hopes of detecting a State gaming code violation that would supply grounds for Plaintiff's termination.[1] (Compl. ¶ 13). Boyd's agents and employees allegedly made false reports of infractions to the Mississippi Gaming Commission on two separate occasions in January of 2001 and February of 2002. (Compl. ¶ 18, ¶ 20). Neither of these incidents ultimately led to any criminal charges being brought against Plaintiff. (Compl. ¶ 19, 22).

On February 27, 2002, Hawkins allegedly conducted an undercover investigation of Plaintiff, presumably at the behest of Anderson and members of Sam's Town's management. (Compl. ¶ 23). Plaintiff contends that Perkins, a video-surveillance employee at Harrah's Casino, acting in concert with Hawkins and employees of Boyd, feigned unfamiliarity with the rules of blackjack, thereby inviting assistance from Plaintiff. (Compl. ¶ 29). Boyd is said to have subsequently accused Plaintiff of "card-counting" and prompting Perkins on when to increase or decrease her bets, in

---

[1] Plaintiff claims that Defendant's employment policy in place at the time Plaintiff worked at Sam's Town mandated that an employee who had been suspended from work three times could be terminated. (Compl. ¶ 16). Plaintiff had allegedly already been suspended from work twice when he was terminated on March 6, 2002. (Compl. ¶ 17).

3

contravention of Miss. Code Ann. § 75-76-301. (Compl. ¶ 25). Plaintiff claims to have had no incentive to break the gaming laws because he was not a friend or acquaintance of Perkins and because he could not have profited from providing her illegal assistance given the tip-sharing procedures in place among Sam's Town dealers and the amount of money Perkins allegedly lost that evening. (Compl. ¶ 26, ¶ 27, ¶ 28, ¶ 31). Boyd suspended Plaintiff from work and, ultimately, terminated him. (Compl. ¶ 24).

After the Tunica County, Mississippi Sheriff's Department obtained a warrant for his arrest on a criminal charge for violation of Mississippi gaming law, Plaintiff surrendered to local authorities in Mississippi on November 27, 2002. (Compl. ¶ 35). For some unknown reason, the authorities responsible for notifying Tennessee officials that Plaintiff had surrendered did not do so, and the Shelby County, Tennessee Fugitive Squad re-arrested Plaintiff at his home in Memphis in the presence of his minor son. (Compl. ¶ 36). A criminal trial did not ensue until October 8, 2004, whereupon a jury acquitted Plaintiff of the charged gaming violation. (Compl. ¶ 37). Plaintiff alleges that, in the interim period between his arrests and acquittal, the pending felony charge caused him to be fired from employment with Bally's Casino and to lose his security clearance with the Federal Correctional Institution, through which he had been an instructor at Southwest Community College in Memphis. (Compl. ¶ 38).

Plaintiff filed a complaint against Boyd and others with this court on June 2, 2005, alleging a civil rights violation under 42 U.S.C. § 1983, malicious prosecution, abuse of process, false arrest, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. (Compl. at 2). On July 5, 2005, Boys filed motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

4

In the alternative, Boyd asked this court to transfer Plaintiff's action to the United States District Court for the Northern District of Mississippi, Delta Division, pursuant to 28 U.S.C. § 1404(a).

## II. Personal Jurisdiction

Fed. R. Civ. P.12(b)(2) authorizes a defendant to make a motion to dismiss based upon the traditional defense that the court lacks jurisdiction over the defendant's person. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351, at 239 (2d ed. 1990). In cases before a federal court based on diversity jurisdiction, an inquiry into the court's personal jurisdiction is both a statutory and a constitutional question. Int'l Techs. Consultants, Inc. v. Euroglas S.A., 107 F.3d 386, 391 (6th Cir. 1997). The statutory question arises because a federal court must apply the law of the state in which it sits when determining whether personal jurisdiction over a defendant exists. Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1115 (6th Cir. 1994). A federal court presiding over a case before it on diversity jurisdiction "may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law." Int'l Techs. Consultants, Inc., 107 F.3d at 391. The constitutional question arises from the fact that this statutory grant of jurisdiction must comport with the requirements of the Fourteenth Amendment's Due Process Clause. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).

For the State of Tennessee, the statutory and constitutional inquiries into personal jurisdiction are essentially the same question. This result obtains because Tennessee's long-arm statutes grant its courts of record the power to exercise personal jurisdiction over a defendant on "[a]ny basis not inconsistent with the constitution of this state or the United States." Tenn. Code Ann. § 20-2-214. Thus, Tennessee courts and federal courts sitting in Tennessee may exercise personal jurisdiction over a defendant to the fullest extent allowed by the Constitution. See Third Nat'l Bank in Nashville

5

v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989).

The seminal case concerning the constitutional requirements for personal jurisdiction is *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). In *International Shoe*, the Supreme Court ruled that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co., 326 U.S. at 316 (citations omitted). In determining whether these constitutional requirements of personal jurisdiction over a defendant have been met, courts have recognized two types of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." See Third Nat'l Bank, 882 F.2d at 1089. For a court to have general jurisdiction, a defendant's contacts with the state must be continuous and systematic. Id. This type of contact with the forum state allows the court to exercise jurisdiction over the defendant even if the case is unrelated to defendant's contacts with the state. Id. A court exercises specific jurisdiction over a defendant where the suit arises out of or is related to the defendant's contacts with the forum state. Id.

Personal jurisdiction determinations are based on the specific facts of each case. See American Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988). The court must evaluate the nature of the plaintiff's claims and the nature of the defendant's contacts with the state. In the face of a defendant's challenge to the court's personal jurisdiction, the plaintiff bears the burden of establishing that such jurisdiction exists. Southern Sys., Inc. v. Torrid Oven Ltd., 58 F.Supp.2d 843, 846 (W.D. Tenn. 1999) (citing American Greetings Corp., 839 F.2d at 1168). If the district court does not conduct an evidentiary hearing on the question of personal jurisdiction, the plaintiff must only establish a prima facie case that personal jurisdiction over the defendant exists. Id. This burden

6

is relatively slight, but the plaintiff must demonstrate facts which support a finding of jurisdiction. Id. (citing American Greeting Corp, 839 F.2d at 1169).

### A.   Specific Jurisdiction

Plaintiff has failed to demonstrate that courts in Tennessee may exercise specific jurisdiction over Boyd. The U.S. Court of Appeals for the Sixth Circuit has established a three-part test to determine whether, under the particular circumstances of each case, an out-of-state defendant may be subjected to specific jurisdiction:

> (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2002) (quoting Southern Machine Co. V. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968)). Specific jurisdiction lies only where each of the three criteria is independently satisfied. See City of Monroe Employees Retirement Sys. v. Bridgestone Corp., 399 F.3d 651, 665 (6th Cir. 2005).

A defendant purposefully avails itself of the forum when that defendant has pursued activity that should provide "fair warning" that it may be subject to a lawsuit there. Youn, 324 F.3d at 418. Purposeful availment does not require that the defendant have ever been physically present in the forum. Neal v. Janssen, 270 F.3d 328, 333 (6th Cir. 2001). An act of the defendant, no matter how isolated, that is directed toward the forum and that gives rise to a cause of action will support the exercise of specific jurisdiction in conformity with due process. See id. The requirement that the cause of action "arise from the defendant's activities" in the forum is satisfied when the "plaintiff's

7

claim has a substantial relation to the defendant's in-state activities." Youn, 324 F.3d at 419 (citing Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1091 n. 2 (internal quotations omitted)). Courts assess whether or not the connection between "the acts of the defendant or consequences caused by the defendant" and the forum are substantial enough "to make the exercise of jurisdiction over the defendant reasonable" by balancing three factors: (1) "the burden on the defendant;" (2) "the interests of the forum State;" and (3) "the plaintiff's interest in obtaining relief." Id. A finding of reasonableness is rarely withheld when the first two prongs of the test for specific jurisdiction are satisfied. Theunissen v. Matthews, 935 F.2d 1454, 1461 (6th Cir. 1991).

Plaintiff analogizes the instant case to this court's decision in *Sharlow v. Cendant Car Rental Group, Inc.*, No. 04-2445 MA/V, 2005 WL 1201140 (W.D.Tenn. 2005), to support his argument that specific jurisdiction is available. (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss at 6–7). In that case, the defendants, operators of a car rental enterprise in Virginia, sought a warrant and pressed charges in Virginia against the plaintiff, who had dropped the vehicle she had rented from the defendants at an affiliated car rental business in Tennessee. Sharlow, 2005 WL 1201140, at *1. At the time the defendants lodged a criminal complaint against the plaintiff in Virginia, they were aware that the plaintiff and the vehicle were located in Tennessee. Id. The court found that the defendants had "purposefully employed Tennessee's law enforcement on their own behalf" by effecting "the intended consequence of [their] decision to press charges in Virginia," that is, the plaintiff's arrest in Tennessee. Id. at *3.

Plaintiff's reliance on *Sharlow* is misplaced. Here, Plaintiff claims that Boyd "purposefully availed itself [of the privileges of conducting activity in Tennessee] by causing severe consequences in this district." (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss at 7). That allegation does not

8

rise to the level of what occurred in *Sharlow*, however. In that case, the defendants *purposefully* directed conduct at Tennessee when they engaged in out-of-state activity *intended* to have an effect in the forum. When they pressed charges with Virginia authorities, the *Sharlow* defendants knew exactly where the person and property they sought would be found: Tennessee. Here, the essence of Plaintiff's complaint is that Boyd, actin in concert with other Mississippi defendants, "set up" Plaintiff in order to have him charged with a gaming violation, thereby establishing a basis for firing him. See (Complaint ¶ 14). The "intended consequence" of Boyd's actions was that Plaintiff would be arrested, not that Plaintiff would be arrested *in Tennessee*. That Boyd knew or should have known that Plaintiff resided in Tennessee does not imply that Boyd *purposefully* made use of Tennessee law enforcement. To hold that specific jurisdiction may be exercised because Plaintiff happened to have been arrested in his state of residence, and then only because of an apparent gaffe by Mississippi law enforcement, would be at odds with established precedent in this jurisdiction. See Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) ("Random, fortuitous, or attenuated activity is not a constitutionally adequate basis for jurisdiction." (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)) (internal quotations omitted)). Similarly, Plaintiff cannot point to his loss of employment in Tennessee as a basis for jurisdiction. It has not been shown that Boyd cared one way or another whether or not Plaintiff would lose his teaching job; Plaintiff only charges that Boyd wanted to be rid of Plaintiff, and that it invoked Mississippi law enforcement in order to insulate itself from a wrongful discharge claim. See (Complaint ¶ 13). That these desires may have motivated Boyd to engage in conduct that allegedly resulted in injury to Plaintiff in Tennessee does not demonstrate that the conduct was *purposefully* directed at Tennessee. Plaintiff cannot point to any activity by Boyd that was directed toward Tennessee out of which his claims could have arisen.

9

There is no need to consider the reasonableness of the exercise of specific jurisdiction, then, since this failure by Plaintiff renders such exercise unavailable.

    B.    *General Jurisdiction*

Plaintiff *has*, however, sufficiently articulated a prima facie case for the exercise of general jurisdiction. "General jurisdiction exists when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." Aristech Chemical International, Ltd. v. Acrylic Fabricators, Ltd., 138 F.3d 624, 627 (6th Cir. 1998). Thus, if Boyd's contacts with Tennessee are "continuous and systematic," the court may exercise personal jurisdiction over it even though Plaintiff's claims do not arise out of those contacts. See Youn, 324 F.3d at 417–18.

In its 2002 annual report to the Securities and Exchange Commission, Boyd described the Tunica County gaming industry as one that services a "primarily drive-in market." (Pl.'s Resp. Def.'s Mot. Dismiss, Ex. A at 5). A significant portion of Sam's Town's customers "drive in" from cities within a 200-mile radius of Tunica County. (Pl.'s Resp. Def.'s Mot. Dismiss, Ex. A at 5). The two largest metropolitan areas within this range are Memphis and Nashville, Tennessee. (Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss at 5). Boyd correctly points out that "the fact that some of Boyd's customers may travel from Tennessee to Boyd's Mississippi location should not subject Defendant to general jurisdiction," (Def.'s Rebut. Mem. Supp. Def.'s Mot. Dismiss at 1), yet its claim that it does not have continuous or systematic contacts with Tennessee, (Mem. Supp. Def.'s Mot. Dismiss at 4), is little more than conclusory. If Boyd had nothing more to do with Tennessee than maintaining a gaming hall roughly 30 miles from its border, the facility's apparent attractiveness to residents of that State could hardly by itself establish personal jurisdiction. See ACH Food

Companies, Inc. v. Wiscon Corp., No. 04-2589 MI/V, 2005 WL 2114056, at *8 (W.D.Tenn. Aug. 30, 2005) ("[M]erely doing business with citizens of a state does not confer general jurisdiction over an out-of-state defendant.").

But Boyd does not simply rely on clientele from Tennessee hearing about Sam's Town through the grapevine. Rather, it has an ongoing advertising strategy which makes use of media outlets that penetrate the Memphis and Nashville markets. (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss at 5). Other courts in this Circuit have found a defendant's advertising and other efforts to solicit business in the forum persuasive in determining that the defendant's contacts with the forum are "continuous and systematic." See e.g., Hoover v. Recreation Equipment Corp., 792 F.Supp. 1484, 1489 (N.D. Ohio 1989) (holding that Ohio could exercise general jurisdiction over an Indiana corporation that had no offices, agents, or employees in Ohio, but that had distributed advertisements, catalogs, and promotional materials in Ohio over nine years). In Smith v. Turfway Park, No. C-3-97-145, 1999 WL 33117268 (S.D.Ohio Mar. 22, 1999), for example, the court found that Due Process did not bar an Ohio court from exercising general jurisdiction over a Kentucky horse-racing track in a premises liability case. Id. at *1. The court determined that minimum contacts were established because the track "continuously and deliberately exploited the market in Ohio" by spending "approximately 80% of their advertising budget in the Cincinnati, Ohio media market" and directing other promotional activities toward Ohio. Id. Applying Turfway Park's reasoning here is apt: Boyd exploits the Memphis and Nashville markets in the same way the Kentucky horse-racing track took advantage of the large customer base it marketed itself to in a large metropolitan area in an adjoining state. The exercise of personal jurisdiction over a defendant that maintains as a close commercial link with the forum as does Boyd with Tennessee certainly

11

comports with "traditional notions of fair play and substantial justice," <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945), and as such, this court DENIES the Boyd's motion to dismiss for lack of personal jurisdiction.

### III. Venue

Plaintiff's choice of venue is not improper. Venue refers to the place where a lawsuit should be heard and, thus, is different from the question of jurisdiction. <u>See Neirbo Co. v. Bethlehem Shipbuilding Corp.</u>, 308 U.S. 165, 167–68 (1939) (acknowledging that jurisdiction is a question of the court's power and venue is a question of the litigants' convenience); <u>see also Gould, Inc. v. Pechiney Ugine Kuhlmann</u>, 853 F.2d 445, 454 (6th Cir. 1988); <u>Dixie Portland Flour Mills, Inc. v. Dixie Feed & Seed Co.</u>, 382 F. 2d 830, 833 (6th Cir. 1967). Venue primarily concerns the convenience of the forum for the parties. <u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173, 180 (1979). Venue is a personal privilege of the defendant and can be waived. <u>Id.</u>; <u>Al-Muhaymin v. Jones</u>, 895 F.2d 1147, 1149 (6th Cir. 1990). It is to be applied to protect the defendant against the plaintiff choosing an unfair or inconvenient place for trial. <u>Leroy</u>, 443 U.S. at 183–84. State law does not control venue in federal court. <u>See id.</u> at 183 n.15; <u>Miller v. Davis</u>, 507 F.2d 308, 316 (6th Cir. 1974).

When subject matter jurisdiction in a civil action is not founded solely upon diversity of citizenship, venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (2005). In cases where subject matter jurisdiction is founded only on diversity

12

of citizenship, venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). The U.S. Court of Appeals for the Sixth Circuit has interpreted this language to mean that venue is proper "in any forum with a substantial connection to the plaintiff's claim." First Michigan Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998). The situs of the plaintiff's injuries has a substantial connection to litigation resulting from the injuries. See, e.g., BlueCross Blueshield of Tenn., Inc. v. Griffin, No. 1:03-CV-140, 2004 WL 1854165, at *3 (E.D.Tenn. 2004). That a greater quantum of the events giving rise to the cause of action occurred in another forum is not relevant to the propriety of the plaintiff's choice of venue. See First Michigan, 141 F.3d at 263.

Plaintiff has alleged that Boyd's actions in Mississippi caused him injury in Tennessee, including, among other things, the loss of his teaching job at Southwest Community College in Memphis. (Compl. ¶ 38). Furthermore, while Plaintiff's arrest by the Shelby County Fugitive Squad was not the product of purposeful, forum-directed activity on the part of Boyd, see supra Part II.A., that event still bears a substantial connection to a number of Plaintiff's individual claims. See, e.g., (Compl. ¶ 60–61) (alleging false arrest). As such, Boyd's motion to dismiss for improper venue is DENIED.

Even where the plaintiff's choice of venue is proper, the court may, "[f]or the convenience of parties and witnesses, [and] in the interest of justice, transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In ruling on a motion to transfer pursuant to 28 U.S.C. § 1404(a), the district court considers a number of case-specific factors, including "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic

integrity and fairness, which come under the rubric of 'interests of justice.'" Moses v. Business Card Exp., Inc., 929 F.2d 1191 (6th Cir. 1991). The decision whether or not, in light of the several factors involved, to transfer the action is generally within the sound discretion of the district court, Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988), but "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Boyd's argument in favor of transfer to the Northern District of Mississippi, Delta Division (Def.'s Mot. Dismiss at 4) is unconvincing. That all parties to the instant action save Plaintiff are residents of Mississippi does not change elementary geography. This court sits approximately thirty-five miles from Boyd's Robinsonville, Mississippi offices, whereas a distance of over eighty-six miles separates Sam's Town from the federal courthouse in Oxford, Mississippi. (Pl.'s Resp. to Def.'s Mot. Dismiss, Ex. E, F). The other defendants live in either Tunica County, Mississippi, or the Memphis suburb of Olive Branch, Mississippi, the latter also being where Boyd's counsel is located. Counsel for Hawkins and Perkins is located in Southaven, Mississippi, the city immediately across the state line from Memphis on Interstate 55. No noteworthy persons, records, or locations known to this court are situated closer to Oxford than Memphis, so it is doubtful that a transfer would result in a more convenient forum for anyone with an interest in the outcome of the litigation.

Neither does the public interest urge a transfer to the Northern District of Mississippi. This court is no stranger to civil rights claims under 42 U.S.C. § 1983 that are combined with miscellaneous common law torts. The gaming statute with which Plaintiff had been charged and ultimately acquitted is less significant to the case than the requirements of federal law and the elements of the common law claims, the latter of which are exceedingly similar between the two

jurisdictions. Given the interest Tennessee has in providing a forum for its citizens to obtain relief, there seems to be little reason to order a transfer in this case.

## IV. Conclusion

For the foregoing reasons, this court finds that it has jurisdiction over the person of Boyd Gaming Corporation, that the Western District of Tennessee is a proper venue for this litigation, and that a transfer to the Northern District of Mississippi, Delta Division, is not warranted. Consequently, Defendant Boyd Gaming Corporation's motions to dismiss and for transfer are DENIED.

**IT IS SO ORDERED** this 14th day of December 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 73 in case 2:05-CV-02406 was distributed by fax, mail, or direct printing on December 19, 2005 to the parties listed.

---

Melanie N. Beckham
WATKINS LUDLAM WINTER & STENNIS PA
6897 Crumpler Blvd.
Ste. 100
Olive Branch, MS 38654

James Robert Nowlin
MORTON & GERMANY
200 Jefferson Ave.
Ste. 725
Memphis, TN 38103

Craig V. Morton
MORTON & GERMANY
200 Jefferson Ave.
Ste. 725
Memphis, TN 38103

Peyton S. Irby
WATKINS LUDLAM WINTER & STENNIS, P.A.
633 N. State St.
Jackson, MS 38205--042

Deanne Brodrick Saltzman
MISSISSIPPI ATTORNEY GENERAL
Gaming Control Division
P.O. Box 220
Jackson, MS 39205

Billy C. Campbell
BASKIN MCCARROLL MCCASKILL & CAMPBELL, P.A.
P.O. Box 190
Southaven, MS 38672

Faye Perkins
P.O. Box 732
Tunica, MS 38676

Nicholas Hunter Manley
WATKINS LUDLAM WINTER & STENNIS PA
6897 Crumpler Blvd.
Ste. 100
Olive Branch, MS 38654

Honorable Bernice Donald
US DISTRICT COURT