FILED BY_____D.C.

05 DEC 19 AM 6:44

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| JAMES SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 05-2406 D V |
| | ) | |
| BOYD GAMING CORPORATION | ) | |
| d/b/a SAM'S TOWN CASINO TUNICA, | ) | |
| WILLIAM ANDERSON, individually and | ) | |
| in his capacity as Sam's Town Employee, | ) | |
| PAT HAWKINS, individually and in his | ) | |
| capacity as a Mississippi Gaming Official, | ) | |
| and FAYE PERKINS, | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER GRANTING DEFENDANT FAYE PERKINS'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

---

Defendant, Faye Perkins ("Perkins"), asks this court to dismiss the complaint of James Sullivan ("Plaintiff") which alleges Perkins's liability against Plaintiff for civil rights violations pursuant to 42 U.S.C. § 1983, malicious prosecution, abuse of process, false arrest, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. Perkins avers that dismissal is warranted under Fed. R. Civ. P. 12(b)(2) because this court cannot exercise personal jurisdiction over Perkins in this case and, further, that dismissal is appropriate under Fed. R. Civ. P. 12(b)(3) because venue is improper. Failing dismissal of Plaintiff's complaint, Perkins requests that the instant action be transferred pursuant to this court's discretion to do so under 28

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____

74

U.S.C. § 1404(a).  For the reasons articulated below, Plaintiff's cause of action is DISMISSED.

## I.      Background Facts

Plaintiff is a resident of Memphis, Tennessee and has lived there during the entire course of events giving rise to the instant action. (Compl. at 1).  Perkins is an eighteen-year resident of Tunica County, Mississippi who has never resided or owned property in Tennessee and who has not been employed in that State for at least thirteen years.  (Def.'s Mot. Dismiss, Ex. 2, ¶¶ 2–3).  While the occurrences spawning Plaintiff's causes of action were occurring, Perkins worked as a video surveillance employee at Harrah's Tunica (now doing business as Resorts Tunica), a casino located in Robinsonville, Mississippi, where she has been employed for the last thirteen years (Compl. ¶ 8); (Def.'s Mot. Dismiss, Ex. 2, ¶ 3).

Plaintiff worked as a card dealer at Sam's Town Casino ("Sam's Town") in Tunica County, Mississippi from July 1997 until his termination on March 6, 2002.  (Compl. ¶ 10).  During the period of his employment, Plaintiff, an African American, allegedly lodged several formal and informal complaints with Sam's Town's management for what he perceived as inadequate workplace diversity, insensitivity toward African American employees and customers, and unfair labor practices and procedures.  (Compl. ¶¶ 11–12).  Plaintiff contends that Sam's Town's management responded by initiating increased surveillance of his actions on the casino floor in hopes of detecting a State gaming code violation that would supply grounds for Plaintiff's termination.[1]  (Compl. ¶¶ 13–14).  Agents of Sam's Town's parent company, Defendant Boyd Gaming Corporation ("Boyd") allegedly

---

[1]      Plaintiff claims that the employment policy in place at the time Plaintiff worked at Sam's Town mandated that an employee who had been suspended from work three times could be terminated.  (Compl. ¶ 16).  Plaintiff had allegedly already been suspended from work twice when he was terminated on March 6, 2002. (Compl. ¶ 17).

made false reports of infractions to the Mississippi Gaming Commission in January of 2001 and February of 2002. (Compl. ¶¶ 18, 20). Neither incident ultimately led to any criminal charges being brought against Plaintiff. (Compl. ¶ 22).

On February 27, 2002, Defendant Pat Hawkins ("Hawkins"), an agent of the Mississippi Gaming Commission, allegedly conducted an undercover investigation of Plaintiff, presumably at the behest of Defendant William Anderson ("Anderson"), a video surveillance supervisor at Sam's Town, and members of Sam's Town's management. (Compl. ¶¶ 7, 23). Plaintiff contends that Perkins, acting in concert with Hawkins and employees of Boyd, feigned unfamiliarity with the rules of blackjack, thereby inviting assistance from Plaintiff. (Compl. ¶ 29). Boyd is said to have subsequently accused Plaintiff of "card-counting" and prompting Perkins on when to increase or decrease her bets, in contravention of Miss. Code Ann. § 75-76-301. (Compl. ¶ 25). Plaintiff claims to have had no incentive to break the gaming laws because he was not a friend or acquaintance of Perkins and because he could not have profited from providing her illegal assistance given the tip-sharing procedures in place among Sam's Town dealers and the amount of money Perkins allegedly lost that evening. (Compl. ¶¶ 26–28, 31). Boyd suspended Plaintiff from work and, ultimately, terminated him. (Compl. ¶ 24).

Plaintiff alleges that Perkins and others "did in fact fabricate and report false, inaccurate and/or incomplete allegations to the Tunica County District Attorney's Office" regarding their observations on February 27, 2002, (Compl. ¶ 52), and further, that they "failed to disclose relevant and exculpatory evidence to the Tunica County District Attorney's Office." (Compl. ¶ 56). After the Tunica County, Mississippi Sheriff's Department obtained a warrant for his arrest on a criminal charge for violation of Mississippi gaming law, Plaintiff surrendered to local authorities in

3

Mississippi on November 27, 2002. (Compl. ¶ 35). For some unknown reason, the authorities responsible for notifying Tennessee officials that Plaintiff had surrendered did not do so, and the Shelby County, Tennessee Fugitive Squad re-arrested Plaintiff at his home in Memphis in the presence of his minor son. (Compl. ¶ 36). A criminal trial did not ensue until October 8, 2004, whereupon a jury acquitted Plaintiff of the charged gaming violation. (Compl. ¶ 37). Plaintiff alleges that, in the interim period between his arrests and acquittal, the pending felony charge caused him to be fired from employment with Bally's Casino and to lose his security clearance with the Federal Correctional Institution, through which he had been an instructor at Southwest Community College in Memphis. (Compl. ¶ 38).

Plaintiff filed a complaint against Perkins and others with this court on June 2, 2005, alleging a civil rights violation under 42 U.S.C. § 1983, malicious prosecution, abuse of process, false arrest, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. (Compl. at 2). Magistrate Judge Diane K. Vescovo granted Perkins an enlargement of time to September 6, 2005, to make a special appearance and respond to the Complaint. (Docket # 32). On September 6, 2005, Perkins moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). In the alternative, Perkins asked this court to transfer Plaintiff's action to the United States District Court for the Northern District of Mississippi, Delta Division, pursuant to 28 U.S.C. § 1404(a).

## II.    Personal Jurisdiction

Fed. R. Civ. P.12(b)(2) authorizes a defendant to make a motion to dismiss based upon the traditional defense that the court lacks jurisdiction over the defendant's person. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351, at 239 (2d ed. 1990). In cases

before a federal court based on diversity jurisdiction, an inquiry into the court's personal jurisdiction is both a statutory and a constitutional question. Int'l Techs. Consultants, Inc. v. Euroglas S.A., 107 F.3d 386, 391 (6th Cir. 1997). The statutory question arises because a federal court must apply the law of the state in which it sits when determining whether personal jurisdiction over a defendant exists. Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1115 (6th Cir. 1994). A federal court presiding over a case based on diversity jurisdiction "may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law." Int'l Techs. Consultants, Inc., 107 F.3d at 391. The constitutional question arises from the fact that this statutory grant of jurisdiction must comport with the requirements of the Fourteenth Amendment's Due Process Clause. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).

For the State of Tennessee, the statutory and constitutional inquiries into personal jurisdiction are essentially the same question. This result obtains because Tennessee's long-arm statutes grant its courts of record the power to exercise personal jurisdiction over a defendant on "[a]ny basis not inconsistent with the constitution of this state or the United States." Tenn. Code Ann. § 20-2-214. Thus, Tennessee courts and federal courts sitting in Tennessee may exercise personal jurisdiction over a defendant to the fullest extent allowed by the Constitution. See Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989).

The seminal case concerning the constitutional requirements for personal jurisdiction is International Shoe Company v. Washington, 326 U.S. 310 (1945). In International Shoe, the Supreme Court ruled that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions

5

of fair play and substantial justice.'" <u>Int'l Shoe Co.</u>, 326 U.S. at 316 (citations omitted).    In determining whether these constitutional requirements of personal jurisdiction over a defendant have been met, courts have recognized two types of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." <u>See</u> <u>Third Nat'l Bank</u>, 882 F.2d at 1089.    For a court to have general jurisdiction, a defendant's contacts with the state must be continuous and systematic. <u>Id.</u> This type of contact with the forum state allows the court to exercise jurisdiction over the defendant even if the case is unrelated to defendant's contacts with the state. <u>Id.</u> A court exercises specific jurisdiction over a defendant where the suit arises out of or is related to the defendant's contacts with the forum state. <u>Id.</u>

Personal jurisdiction determinations are based on the specific facts of each case.    <u>See</u> <u>American Greetings Corp. v. Cohn</u>, 839 F.2d 1164, 1169 (6th Cir. 1988).    The court must evaluate the nature of the plaintiff's claims and the nature of the defendant's contacts with the state.    In the face of a defendant's challenge to the court's personal jurisdiction, the plaintiff bears the burden of establishing that such jurisdiction exists. <u>Southern Sys., Inc. v. Torrid Oven Ltd.</u>, 58 F.Supp.2d 843, 846 (W.D. Tenn. 1999) (citing <u>American Greetings Corp.</u>, 839 F.2d at 1168).    If the district court does not conduct an evidentiary hearing on the question of personal jurisdiction, the plaintiff must only establish a prima facie case that personal jurisdiction over the defendant exists. <u>Id.</u> This burden is relatively slight, but the plaintiff must demonstrate facts which support a finding of jurisdiction. <u>Id.</u> (citing <u>American Greeting Corp</u>, 839 F.2d at 1169).

Plaintiff has failed to demonstrate that courts in Tennessee may exercise specific jurisdiction

6

over Perkins.[2]  The U.S. Court of Appeals for the Sixth Circuit has established a three-part test to

determine whether, under the particular circumstances of each case, an out-of-state defendant may

be subjected to specific jurisdiction:

> (1) the defendant must purposefully avail himself of the privilege of acting in the
> forum state or causing a consequence in the forum state; (2) the cause of action must
> arise from the defendant's activities there; and (3) the acts of the defendant or
> consequences caused by the defendant must have a substantial enough connection
> with the forum state to make the exercise of jurisdiction over the defendant
> reasonable.

Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2002) (quoting Southern Machine Co. V. Mohasco

Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968)).  Specific jurisdiction lies only where each of the

three criteria is independently satisfied.  See City of Monroe Employees Retirement Sys. v.

Bridgestone Corp., 399 F.3d 651, 665 (6th Cir. 2005).

A defendant purposefully avails itself of the forum when that defendant has pursued activity

that should provide "fair warning" that it may be subject to a lawsuit there.  Youn, 324 F.3d at 418.

Purposeful availment does not require that the defendant have ever been physically present in the

forum.  Neal v. Janssen, 270 F.3d 328, 333 (6th Cir. 2001).  An act of the defendant, no matter how

isolated, that is directed toward the forum and that gives rise to a cause of action will support the

exercise of specific jurisdiction in conformity with due process.  See id.  The requirement that the

cause of action "arise from the defendant's activities" in the forum is satisfied when the "plaintiff's

---

[2]      Plaintiff has also argued that "Perkins has waived her right to personal jurisdiction
and venue by making a general appearance without objecting to this Honorable Court's ability to
exercise jurisdiction over her." (Pl.'s Resp. Def.'s Mot. Dismiss, at 4).  This argument can be
wholly discarded at the outset, however, because it is clear that motions presently under
consideration are exactly the "Rule 12 defenses" for which Judge Vescovo granted Perkins an
enlargement of time to assert in a *special appearance*.  See supra.  It is inconceivable that
counsel for Plaintiff could plausibly entertain the idea that a litigant who is granted leave to make
a special appearance has made a general appearance by virtue of asking for that permission.

claim has a substantial relation to the defendant's in-state activities." <u>Youn</u>, 324 F.3d at 419 (citing

<u>Third Nat'l Bank in Nashville v. WEDGE Group, Inc.</u>, 882 F.2d 1087, 1091 n. 2 (internal quotations

omitted)).   Courts assess whether or not the connection between "the acts of the defendant or

consequences caused by the defendant" and the forum are substantial enough "to make the exercise

of jurisdiction over the defendant reasonable" by balancing three factors: (1) "the burden on the

defendant;" (2) "the interests of the forum State;" and (3) "the plaintiff's interest in obtaining relief."

<u>Id.</u>  A finding of reasonableness is rarely withheld when the first two prongs of the test for specific

jurisdiction are satisfied.  <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1461 (6th Cir. 1991).

Plaintiff's argument that Perkins established minimum contacts sufficient to justify this

Court's exercise of specific personal jurisdiction over her when she placed a telephone call to

Plaintiff's private investigator in Memphis, (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss, at

6), is entirely without merit.  While a non-resident defendant who makes phone calls into the forum

may "purposefully avail" herself of the forum, that result obtains only "where the phone calls . . .

form the bases for the action."  <u>Neal</u>, 270 F.3d at 332 ("When the actual content of the

communications into the forum gives rise to an intentional tort action, that alone may constitute

purposeful availment.").  Plaintiff claims that Perkins availed herself of the privilege of acting in

Tennessee when she called Plaintiff's private investigator and then refused to give a statement

without first conferring with Hawkins.  (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss, at 6).

This assertion grossly misstates the law announced in *Neal*.  If courts are to adjudge purposeful

availment by reference to the "content of the communications into the forum," *supra*, it appears that

Plaintiff's claim is doomed, since it relies on the allegation that the communication Perkins made

to the private investigator effectively said *nothing*.

Plaintiff goes on to analogize the instant case to this court's decision in *Sharlow v. Cendant Car Rental Group, Inc.*, No. 04-2445 MA/V, 2005 WL 1201140 (W.D. Tenn. May 19, 2005), to support his argument that specific jurisdiction is available. (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss, at 7–8). In that case, the defendants, operators of a car rental enterprise in Virginia, sought a warrant and pressed charges in Virginia against the plaintiff, who had dropped the vehicle she had rented from the defendants at an affiliated car rental business in Tennessee. Sharlow, 2005 WL 1201140, at *1. At the time the defendants lodged a criminal complaint against the plaintiff in Virginia, they were aware that the plaintiff and the vehicle were located in Tennessee. Id. The court found that the defendants had "purposefully employed Tennessee's law enforcement on their own behalf" by effecting "the intended consequence of [their] decision to press charges in Virginia," that is, the plaintiff's arrest in Tennessee. Id. at *3.

Plaintiff's reliance on *Sharlow* is misplaced. Here, Plaintiff claims that Perkins "purposefully availed herself [of the privileges of conducting activity in Tennessee] . . . [b]y causing severe consequences in this state." (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss at 8). That allegation does not rise to the level of occurrences in *Sharlow*, however. In *Sharlow*, the defendants *purposefully* directed conduct at Tennessee when they engaged in out-of-state activity *intended* to have an effect in the forum. When they pressed charges with Virginia authorities, the *Sharlow* defendants knew exactly where the person and property they sought would be found: Tennessee. Here, the essence of Plaintiff's complaint is that Perkins, acting in concert with other Mississippi defendants, "set up" Plaintiff in order to have him charged with a gaming violation, thereby establishing a basis for firing him. See (Complaint ¶ 14). Perkins's allegedly "intended consequence" was that Plaintiff would be arrested, not that Plaintiff would be arrested *in Tennessee*.

To hold that specific jurisdiction may be exercised because Plaintiff happened to have been arrested in his state of residence, and then only because of an apparent gaffe by Mississippi law enforcement, would be at odds with established precedent in this jurisdiction. See Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) ("Random, fortuitous, or attenuated activity is not a constitutionally adequate basis for jurisdiction." (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)) (internal quotations omitted)).   Similarly, Plaintiff cannot point to his loss of employment in Tennessee as a basis for jurisdiction.  It has not been shown that Perkins cared one way or another whether or not Plaintiff would lose his teaching job; Plaintiff only charges that Perkins "wrongly participated in an investigation" and prosecution of Plaintiff that occurred entirely in Mississippi. See (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss, at 8).  That her conduct resulted in injury to Plaintiff in Tennessee does not demonstrate that the conduct was *purposefully* directed at Tennessee.  Plaintiff cannot point to any activity by Perkins that was directed toward Tennessee out of which his claims could have arisen.  There is no need to consider the reasonableness of the exercise of specific jurisdiction, then, since this failure by Plaintiff renders such exercise unavailable.

Plaintiff has raised no arguments in support of a claim for general jurisdiction over Perkins. Since Plaintiff has not met his burden of making out a prima facie case of personal jurisdiction under that theory, see Southern Sys., Inc. v. Torrid Oven Ltd., 58 F.Supp.2d 843, 846 (W.D. Tenn. 1999) (citing American Greetings Corp., 839 F.2d at 1168), this Court will not strive to find support for the exercise of such jurisdiction.

Finally, Plaintiff asks the Court to hear his case against Perkins on the basis of a "conspiracy theory of personal jurisdiction." (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss, at 10–12). The Tennessee Supreme Court held in *Chenault v. Walker*, 36 S.W.3d 45 (Tenn. 2001), that this doctrine

"fits within the Tennessee long-arm statute and comports with due process." Id. at 55. Whether or not the *Chenault* court's pronouncement with respect to due process considerations was actually correct is a question as yet unresolved in this Circuit, see Chrysler Corporation v. Fedder, 643 F.2d 1229 (6th Cir. 1980) (declining to either adopt or reject the conspiracy theory of *in personam* jurisdiction), and one that need not be answered today. Even assuming that personal jurisdiction properly exercised over a conspirator can be imputed to extra-jurisdictional co-conspirators, Plaintiff cannot take advantage of this expansive rule.

The Tennessee Supreme Court has endorsed the version of the conspiracy theory advanced in *Cawley v. Bloch*, 544 F.Supp. 133 (D.Md. 1982). Chenault, 36 S.W.3d at 53. Under *Cawley*, when –

> (1) two or more individuals conspire to do something,
> (2) that they could reasonably expect to lead to consequences in a particular forum, if,
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

Cawley, 544 F.Supp. at 135. Taking at face value Plaintiff's allegation that "Perkins conspired with . . . Hawkins, . . . Anderson, . . . and Boyd . . . to maliciously prosecute and cause the false arrest of [Plaintiff]," (Pl.'s Mem. Supp. Pl.'s Resp. Def.'s Mot. Dismiss, at 11), that agreement and the acts allegedly flowing from it do not meet *Cawley*'s criteria. The second element under that rubric requires that "they," meaning the parties to the alleged conspiracy, "could reasonably expect" that they would "lead to consequences in a particular forum." Cawley, 544 F.Supp. at 133. That none of the named defendants could have reasonably expected their acts, or those of their alleged

confederates, would have consequences *in Tennessee* has already been established.  <u>See</u> <u>supra</u>.

Furthermore, at least one member of the conspiracy must commit "overt *acts* in furtherance of the

conspiracy . . . which, if committed to a non-resident, would subject the non-resident to personal

jurisdiction under the long-arm statute of the forum state." <u>Id.</u> (emphasis added).  Plaintiff has not

identified any *acts* by any of Perkins's co-defendants that would subject any of them to personal

jurisdiction.  <u>See</u> (Order Granting William Anderson's Motion to Dismiss for Lack of Personal

Jurisdiction; Order Granting Pat Hawkins's Motion to Dismiss for Lack of Personal Jurisdiction;

Order Denying Boyd Gaming Corporation's Motions to Dismiss for Lack of Personal Jurisdiction

and Improper Venue).

The only basis on which the Court may exercise personal jurisdiction in this case is general

jurisdiction with respect to Boyd.  An attempt to impute a conspirator's amenability to general

jurisdiction—which, by definition, has no connection to the alleged conspiracy—to an extra-

jurisdictional co-conspirator is a nonstarter which subverts the logic of *Chenault*: that "the *acts* of

a conspirator in furtherance of an illegal agreement with his co-conspirator are attributed to that co-

conspirator." <u>Chenault v. Walker</u>, 36 S.W.3d 45, 54 (emphasis added).  Without a jurisdiction-

granting *act* of one of the members of a conspiracy, there is no jurisdiction to impute to his

confederates.

## IV.   Conclusion

Since courts in Tennessee may not exercise jurisdiction in this matter over the person of

Defendant, Faye Perkins, there is no need to consider the propriety of Plaintiff's choice of venue or

the factors weighing for or against a transfer of venue to the Northern District of Mississippi, Delta

Division.  For the foregoing reasons, Plaintiff's cause of action is DISMISSED.

**IT IS SO ORDERED** this *16* day of *December* 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

13

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 74 in case 2:05-CV-02406 was distributed by fax, mail, or direct printing on December 20, 2005 to the parties listed.

---

Nicholas Hunter Manley
WATKINS LUDLAM WINTER & STENNIS PA
6897 Crumpler Blvd.
Ste. 100
Olive Branch, MS 38654

Faye Perkins
P.O. Box 732
Tunica, MS 38676

Billy C. Campbell
BASKIN MCCARROLL MCCASKILL & CAMPBELL, P.A.
P.O. Box 190
Southaven, MS 38672

Peyton S. Irby
WATKINS LUDLAM WINTER & STENNIS, P.A.
633 N. State St.
Jackson, MS 38205--042

Melanie N. Beckham
WATKINS LUDLAM WINTER & STENNIS PA
6897 Crumpler Blvd.
Ste. 100
Olive Branch, MS 38654

James Robert Nowlin
MORTON & GERMANY
200 Jefferson Ave.
Ste. 725
Memphis, TN 38103

Deanne Brodrick Saltzman
MISSISSIPPI ATTORNEY GENERAL
Gaming Control Division
P.O. Box 220
Jackson, MS 39205

Craig V. Morton
MORTON & GERMANY
200 Jefferson Ave.
Ste. 725
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT